IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THE BENSALEM MASJID, INC., *A PENNSYLVANIA CORPORATION*<br><br>v.<br><br>**BENSALEM TOWNSHIP, PENNSYLVANIA & BENSALEM TOWNSHIP ZONING HEARING BOARD** | CIVIL ACTION<br><br><br>NO. 14-6955 |
|---|---|

**MEMORANDUM AND ORDER RE: EFFECTUATION OF 2017 CONSENT ORDER**

**Baylson, J.**  May 10, 2022

**I.  Introduction**

To effectuate the 2017 Consent Order (ECF 117), and following the hearing held on April 19, 2022 and the post-hearing submissions by both parties (ECF 141, 142, 143, 144), the Court is determined to move this case forward in a logical and orderly manner to come to a full and final decision on the desire of the Plaintiff to construct a mosque on the property it owns on Hulmeville Road in Bensalem, Pennsylvania.

**II.  Discussion**

"[D]istrict courts are afforded wide discretion to give effect to joint compromises that timely advance the interests of the parties without wasteful litigation."  Sullivan v. DB Invs., Inc., 667 F.3d 273, 317 (3d Cir. 2011).  This includes giving effect to consent decrees, which "need not be limited to the relief that a court could provide on the merits."  Sansom Comm. by Cook v. Lynn, 735 F.2d 1535, 1538 (3d Cir. 1984); see also Sullivan, 667 F.3d at 317 ("[A]s the Supreme Court has recognized, a district court may provide broader relief in an action that is resolved before trial than the court could have awarded after a trial.") (internal quotations omitted) (quoting In re Agent

Orange Prod. Liab. Litig., 818 F.2d 179, 185 (2d Cir.1987) & Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland, 478 U.S. 501, 525 (1986))  Although "a district court cannot wield its equitable power beyond the realm of its federal subject matter jurisdiction[,] . . . as long as the terms of a consent decree come 'within the general scope of the case made by the pleadings,' it will be within the district court's power to enter the decree, if the pleadings state a claim over which a federal court has jurisdiction."  Sansom, 735 F.2d at 1538 (internal citations omitted) (quoting Pac. R.R. v. Ketchum, 101 U.S. 289, 297 (1879)); see also Teamsters Local 177 v. United Parcel Serv., 966 F.3d 245, 254 (3d Cir. 2020) (recognizing the holding in Sansom).  This is true even when the relief encompassed within a consent decree is not contemplated by the underlying statute, yet is "directly responsive" to the allegations in the complaint and is consistent with the statute's general policies and goals.  Sansom, 735 F.2d at 1539.

In Sansom, the Third Circuit addressed the validity of a modified consent decree.  The district court entered a consent decree in 1980 which detailed a "cooperative plan" for the rehabilitation and use of properties along the 3400 block of Sansom Street in West Philadelphia.  Id. at 1536-37.  Following the "unraveling" of the 1980 consent decree, the district court entered a second consent decree in 1982, which, according to the Third Circuit, was "essentially a modification" of the 1980 consent decree.  Id. at 1537-38 & n.3 (citing Del. Valley Citizens' Council v. Pennsylvania, 674 F.2d 976, 980 (3d Cir. 1982) (noting a district court's "inherent power to modify a consent decree, even over the objection of one of the parties")).  On appeal of the district court's denial of a motion to enforce the 1982 consent decree as to the replacement of withdrawing designees, the Third Circuit held that the validity of the 1982 consent decree hinged on whether the district court had subject matter jurisdiction to enter the 1980 consent decree.  Id. at 1537-38.

Although the relief outlined in the 1980 consent decree "far exceeded the relief available" under the National Environmental Policy Act of 1969 and the National Housing Act of 1949—the two statutes pursuant to which plaintiff alleged defendants violated—the Third Circuit determined that the decree "was directly responsive to the [plaintiff's] complaint under these statutes" and was thus "sufficiently related to the [plaintiff's] federal causes of action to permit the district court to enter the decree without overstepping its subject matter jurisdiction." Id. at 1538-39. Therefore, the Court concluded that the district court had subject matter jurisdiction over the 1980 consent decree and thus the subsequent, modified 1982 consent decree remained valid. Id. at 1540; see also Sierra Club, Inc. v. Elec. Controls Design, Inc., 909 F.2d 1350, 1355-56 (9th Cir. 1990) (holding that a consent decree was valid given it fell within the scope of the pleadings, furthered the "broad objectives upon which the complaint was based," and did not violate the underlying statute upon which the violation was alleged).

The Court rejects Defendants' suggestions that it is beyond the Court's authority under the Consent Order to instruct the Township Council, the Township Zoning Hearing Board, or any relevant local entity.

The Court rejects Defendants' contentions that Plaintiff's claim asserted in its Motion for Post-Judgment Relief falls exclusively under the Pennsylvania Municipalities Planning Code. The Court concludes that federal law, specifically the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), governs. To the extent that Pennsylvania law supplies a substantive land use provision, the Court expects the parties to follow it, but Defendants cannot use provisions of Pennsylvania law to prevent Plaintiff from realizing its goal of erecting a mosque for the First Amendment exercise of religion. This Court has inherent power to effectuate the Consent Order

3

for Plaintiff to achieve its desired objective. The Supremacy Clause of the U.S. Constitution requires no less.

Furthermore, "Congress enacted RLUIPA . . . 'in order to provide very broad protection for religious liberty.'" Holt v. Hobbs, 574 U.S. 352, 356 (2015) (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 693 (2014)); see also Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 261 (3d Cir. 2007) (RLUIPA is "the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burden, consistent with [Supreme Court] precedent") (quoting Cutter v. Wilkinson, 544 U.S. 709, 714 (2005)). Directing Defendants to adhere to a course of action and timeframe in reviewing Plaintiff's application is consistent with RLUIPA's general policies and goals. See Sansom, 735 F.2d at 1539; see, e.g., Woodcliff Lake Citizens Against Overdevelopment, Inc. v. Borough of Woodcliff Lake, No. 20-16003, 2022 WL 874440, at *4-5 (D.N.J. March 24, 2022).

### III. Order

The following order shall apply:

1. Within ten (10) days from the date of this Order, Plaintiff shall submit to Defendants, through their counsel, its most current application seeking a full and final approval by Defendants, specifying any amendments to prior submissions, and including any supplemental information.

    a. In making this submission, Plaintiff shall take into account any and all federal, state, and local requirements which Defendants have asserted are necessary, stating whether they agree or disagree. Any disagreement must be specific. Plaintiff may include citations or other material in this submission.

2. Within seven (7) days of receipt of Plaintiff's submission pursuant to supra ¶ 1, Defendants shall have a face-to-face meeting for Plaintiff's counsel and/or representatives, to discuss with responsible employees of Defendant knowledgeable of the subject matter of this case, at Defendants' office, any objections or other responses to the propriety and sufficiency of materials that Plaintiff has presented through supra ¶ 1.

   a. At this meeting, both parties shall be prepared to discuss the application and all objections and comments in a substantive matter and, if necessary, shall adjourn and get back to each other on all objections and comments made, within forty-eight (48) hours.

3. Within seven (7) days of the meeting pursuant to supra ¶ 2, or, if applicable, supra ¶ 2a, Plaintiff shall submit any further materials in support of its plans to build a mosque.

4. Within seven (7) days of Plaintiff's submission of any additional material pursuant to supra ¶ 3, Defendants shall respond in writing to Plaintiff's final submissions pursuant to supra ¶¶ 2-3, and shall schedule, to take place within fourteen (14) days, any hearings (or other procedural opportunities) for Plaintiff to present further evidence or testimony as Defendants may assert are necessary.

5. The hearing(s) shall proceed as scheduled for as long as necessary for Plaintiff to present its testimony and argument.

6. Within fourteen (14) days of the hearing(s) (or other procedural opportunities) pursuant to supra ¶¶ 4-5, Defendants shall make a final decision on the pending applications of Plaintiff, stating, if applicable, any reasons for rejections in detail.

7. Within fourteen (14) days after Defendants' final decision on the application, Plaintiff may file appropriate motions with this Court consistent with the terms of the Consent Order,

and/or any appeals allowed by Pennsylvania law, to secure final approvals to which Plaintiff believes it is entitled.

8. In submitting the written materials as required by this Order, the parties shall use sequentially numbered paragraphs, with each paragraph referring to a specific requirement or a response to an assertion of a requirement—and all responses shall use the same corresponding sequentially numbered paragraphs, so that this Court or any other reviewing entity will be able to ascertain any references to a precise assertion and corresponding response to those assertions, whether made by Plaintiff or Defendants.

9. The Court envisions that the above shall be an interactive, ongoing communication between Plaintiff and Defendants, whether accompanied by their counsel or otherwise, to move forward on the purposes of the Consent Order as originally entered by this Court in 2017.

10. The parties may, by stipulation filed for approval within fourteen (14) days, agree to modify the above schedule as necessary for preparation and/or corrections, as long as any motions regarding Defendants' final decision on the application, if applicable, are communicated to this Court, as required per <u>supra</u> ¶ 7, no later than **Friday, July 15, 2022**. Any other modification of the above dates is limited to unforeseen and/or unforeseeable events, such as illness or pandemic-related safeguards. If such a modification is necessary, the parties shall consult with each other on a revised schedule, on a timeframe consistent with this Order.

11. The parties shall file a joint status report no later than **Monday, June 24, 2022** as to where the parties are in the above process.

12. The parties shall alert the Court with forty-eight (48) hours of any issues that arise pursuant to the implementation of this Order to schedule a recorded telephonic conference. The Court may impose costs or sanction on any party for refusal to follow this Order.

BY THE COURT:

/s/ MICHAEL M. BAYLSON
_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 14\14-6955 bensalem masjid inc. v. bensalem twp\14cv6955 Memorandum Re Effectuation of 2017 Consent Decree.docx